WESTERN UNION TELEGRAPH COMPANY *v.* CROW.

Opinion delivered January 13, 1913.

1. TELEGRAPH COMPANIES—APPEAL AND ERROR—MENTAL ANGUISH—INSTRUCTIONS.—Where a husband sues a telegraph company for damages for mental anguish for failure to deliver a message sent by him to his wife to meet him in St. Louis and proceed with him to the funeral of his father, an instruction that the husband could recover only for the cost of the undelivered telegram and the cost of a telegram or telephone message to his wife from St. Louis, because upon reaching St. Louis, and not finding his wife he could have then telegraphed or telephoned his wife to meet him and she could have done so, is erroneous, because it does not take into consideration the circumstances surrounding the parties, such as the fact that the wife would have had to have taken a train at 2 o'clock in the night with a baby and necessary baggage. (Page 121.)

2. TELEGRAPH COMPANIES—DAMAGES—WHEN EXCESSIVE—REMITTITUR.—When a husband sues a telegraph company for damages for mental anguish caused by its failure to deliver a message to his wife, apprising her of his father's death and telling her to meet him in St. Louis and

accompany him to the funeral; and his testimony showed that his mental anguish was caused by the absence of the consolation which the presence of his wife would have afforded him, and the jury awarded him $500 as damages, the judgment is excessive, and will be reversed unless the husband remits $400.   (Page 122.)

3.   TELEGRAPH COMPANIES—MENTAL ANGUISH.—Where a wife sues a telegraph company for damages for mental anguish caused by its failure to deliver a message to her from her husband, telling her of his father's death and to meet him at St. Louis and proceed to the funeral, and the proof shows that she was already advised of the death of her father-in-law in time to have met her husband in St. Louis, and gone with him to the funeral; that she had never seen her father-in-law and had no affection for him, and intended to go to the funeral only if requested to do so by her husband; the failure to receive the message was only a source of disappointment to her, and caused her no mental anguish within the legal definition of the term.   (Page 122.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; reversed as to Mrs. Crow, affirmed on remittitur as to J. W. Crow.

### STATEMENT BY THE COURT.

On February 17, 1912, J. W. Crow was at Texarkana, Arkansas.  His residence was at Marshall, Missouri, where his wife and children were.  His father lived at Ashley, Illinois, and died on that date.  A message was sent from Ashley, Illinois, to J. W. Crow at Texarkana, which reached there about 6:00 p. m. of the 17th, and read:

"Father died at 3:30" (Signed) Joe.

A message was also sent from Ashley, Illinois, to J. W Crow at Marshall, Missouri, containing the same information. At 8:55 P. M. of the 17th Mrs. Crow sent a message from Marshall, Missouri, to Texarkana, addressed to J. W. Crow, reading:

"Received telegram your father is dead.  Are you going to Ashley?  Wire me particulars."

Prior to the receipt of this message, however, Mr. Crow had dispatched a message from Texarkana to Marshall, reading:

"Father is dead.  Will leave in morning.  Should arrive at St. Louis tomorrow night.  You leave on Alton at noon. Meet me at Union Depot waiting room."

This message was filed at Texarkana at 6:30 P. M. and in the course of its transmission, was erroneously sent to Marshall,

Texas, instead of Marshall, Missouri.  Mr Crow also received another message from Marshall, Missouri, containing the same information as did the others which had been sent to Marshall from Ashley, and was repeated to him from Marshall, Missouri.

Mr. Crow left Texarkana the next morning, the 18th at about 6:00 and reached St. Louis about 11:00 that evening. His father's death took place at Ashley, Illinois, on the 17th at about 2:00 in the afternoon.  The train on which Mr. Crow was travelling was late in reaching St. Louis, so he wired to a brother, who communicated with a brother-in-law at Kirkwood, and arranged that the brother-in-law at Kirkwood should meet Mrs. Crow at the Union Station at St. Louis. He endeavored to do this, but Mrs. Crow did not arrive there. When the plaintiff reached St. Louis he looked around the waiting room for his wife, and inquired at the bureau of information.  He also telephoned his brother-in-law at Kirkwood, and learned she had not come.  Next morning he telegraphed his wife at Marshall, asking why she had not come.  Nothing is said in the record of anything he may or may not have received in answer to this wire from St. Louis.  There is testimony tending to show that he could have telephoned to Marshall after he arrived at St. Louis and have reached his wife by telephone, and that she could have taken the train from there at 2:00 A. M. and have reached St. Louis in time to have accompanied her husband to Ashley on the train, which he did take, and which left St. Louis at 8:30 in the morning.  Mr. Crow attended the funeral of his father, but Mrs. Crow did not.  The husband sued for damages for $1,000 for being deprived of the consolation and comfort the presence of his wife would have afforded him.  The wife sued for the same amount of damages alleged to have been occasioned because she was denied the opportunity of affording the comfort and consolation to her husband, and of attending the funeral.  After the funeral Mr. Crow returned to Marshall and spent some time there with his wife and family.

J. W. Crow testified, if my wife had received my message she would have arrived at the Union Station in St. Louis at 7 o'clock P. M. and, if my train had been on time, I would have been at the station to meet her.  On account of my train being late I did not arrive at St. Louis until about 11 o'clock P. M.

I went through the waiting room and found that my wife was not there and, as I had wired my brother from Benton, Arkansas, to come to St. Louis and meet her, I supposed he had come in and gotten her and they had gone out on the train. I went to the bureau of information and asked if there was any word there for me. There was not. I then called up a brother-in-law in Kirkwood, a suburb of St. Louis, but could not get any one there. There was a train which left Marshall at about 2 o'clock in the night time and arrived in St. Louis early in the morning. I stayed over in St. Louis, thinking possibly my wife might come on that train. We had a baby which was being raised on the bottle and, if my wife had come on the night train, she would have had to get on the train about 2 o'clock in the night with her baby and two grips. Ashley, Illinois, was about an hour's journey by rail from St. Louis and Marshall, Missouri, was three or four hours journey from St. Louis.

The jury returned a verdict for J. W. Crow in the sum of $504.77, and in favor of his wife in the sum of $250. From the judgment rendered the telegraph company has appealed to this court.

*George H. Fearons, Charles S. Todd,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. "Mental anguish contemplates suffering in mind over the real ills, griefs and sorrows of life." 83 Ark. 481. The testimony does not sustain the verdict in favor of J. W. Crow on account of mental anguish. The presence of his wife would doubtless have been in some measure a comfort to him, and her absense perhaps produced an unpleasant sensation, but it can not be classed as one of the real ills, griefs or sorrows of life. In the Garlington case, an exceptional one, 142 S. W. 854, this court confessed that it had carried the doctrine of recovery for mental anguish quite as far as it should go. The Griffin case, 92 Ark. 219, should be overruled before it becomes established as a precedent for the recovery of vague damages; but even in that case the elements of distress were. much greater than in this where the wife "was not personally acquainted" with the deceased.

2. J. W. Crow was not entitled to recover because of

his own lack of ordinary care, and because of his own contributory negligence. 143 S. W. 1078; 2 Joyce on Electric Law, § 738a, § 821; Jones on Tel. & Tel. Companies, § 197; Cooley on Torts, § 674; 88 Tex. 230; 93 Tex. 117; 92 Ark. 59.

3. The verdict in favor of J. W. Crow is excessive. 143 S. W. 854; 90 Ark. 57; 84 Ark. 457.

4. The facts clearly show that Mrs. Crow is not entitled to damages. 149 S. W. 557.

*Frank S. Quinn,* for appellees.

1. The verdict in favor of Mrs. Crow is clearly justified, aside from her failure to reach her husband and be with him in his hour of distress. 98 Ark. 87; 99 Ark. 117; 98 Ark. 347.

2. The right of J. W. Crow to recover on account of being deprived of the presence of his wife, etc., is sustained by the decision in the Griffin case, 92 Ark. 219.

HART, J., (after stating the facts). It is insisted by counsel for appellant that the court erred in refusing to give instruction numbered 3 requested by them, which is as follows:

"If you find from the evidence that plaintiff, J. W. Crow, arrived at Union Station, St. Louis, Missouri, at about 11 o'clock, P. M., on the night of February 18, 1912, and immediately learned that his wife had not come in response to his message, and you further find that he could thereafter, by the use of ordinary care and diligence, have communicated with his wife at Marshall, Missouri, by telegraph or telephone in time for her to have left Marshall, Missouri, and have joined him at Union Station, St. Louis, before 8:30 o'clock on the morning of February 19, and have thence proceeded with him to Ashley, Illinois, then the plaintiff, J. W. Crow, can recover only the cost of the message sued on, and the additional sum it would have cost him to so communicate by wire with his wife, and you will return a verdict in his favor for such sum as is shown by the evidence, and no more."

We do not think the court erred in refusing to give this instruction. It in effect told the jury that if J. W. Crow learned that his wife had not come in response to his message immediately upon his arrival at St. Louis and that he could by the use of ordinary care have communicated with her by

telegraph or telephone in time for her to have reached St. Louis the next morning, he could not recover. The instruction as thus framed does not take into consideration the circumstances surrounding the parties. Mrs. Crow would have had to have left her home and taken the train at about 2 o'clock in the night time with her baby and the necessary grips. The question of whether or not it was prudent for her to do this was taken away from the consideration of the jury by the instruction, and for that reason the court properly refused to give it. Moreover, the testimony does not show that he learned that she had not arrived immediately upon his arrival at St. Louis. He only learned that she was not at the station, but he said he supposed that his brother had met her and gone on with her. It will be remembered that he testified that when he found his train would not arrive at St. Louis in time to meet his wife he telegraphed his brother to come to St. Louis and meet her. J. W. Crow called up his brother-in-law, who resided in a suburb of St. Louis, and could not get any one. He remained over night in St. Louis and it was not until next morning that he learned that his wife had not come.

It is next contended by counsel for appellant that the verdict in favor of J. W. Crow is excessive, and in this contention we agree with them. We think that under the circumstances of this case the sum of one hundred dollars would be ample compensation for the mental anguish he endured because of the absence of the consolation which the presence of his wife would have afforded him. His wife was not even acquainted with his father, and only had that affection for him which was engendered by her love for her husband. Appellee Crow was also entitled to the sum of $4.77 for amounts expended by him in an additional telegram and expenses incurred by him in staying over in St. Louis. If appellee J. W. Crow will remit the sum of four hundred dollars within the next ten days, the judgment will be affirmed; otherwise, it must be reversed and the cause remanded for a new trial. *Western Union Tel. Co.* v. *Garlington,* 101 Ark. 487.

In regard to the case of Mrs. J. W. Crow, but little need be said. The undisputed facts in this case show that Mrs. Crow was advised of the death of her father-in-law in time for

her to have met her husband at St. Louis and could have gone with him to the funeral. Her failure to go was the result of her own indisposition or lack or ordinary diligence on her part. Moreover, the testimony shows that she did not intend to go unless advised to do so by her husband. She had never seen her father-in-law and had no affection for him except such as was prompted by her relation to her husband. Under these circumstances her failure to receive her husband's message, notifying her to meet him at St. Louis to go to the funeral, was only a source of disappointment to her, and did not cause her mental anguish within the legal definition of the term.

The judgment in favor of Mrs. Crow will be reversed and her cause of action dismissed.